All right, we'll start with the United States v. Pardee and Mr. Du Bois. Good morning, Your Honor. May it please the Court, my name is Alan Du Bois and I represent the appellant in this case, Michael Pardee. Go back again. Du Bois? Du Bois. We do it in French. That part of my family does, yeah. I'll answer to anything. Well, now I want to do it. Well, it's Du Bois. Your Honor, in reaching his decision to commit Mr. Pardee, the district court relied heavily on certain factual allegations contained in a 10-year-old pre-sentence report. The court accepted these allegations as true, despite the fact that they were hearsay, despite the fact that Mr. Pardee contested their veracity and reliability, and despite the fact that Mr. Pardee had never had an opportunity in any forum, much less this instant hearing, to confront and cross-examine the unknown proponents of these statements that were in the PSR. Let me ask you this. He didn't object to the admission of that 2002 pre-sentence report, did he? Your Honor, that's correct. And in our brief, we acknowledge that we are on plain air. Though I would say this. This is not a case where either Mr. Pardee or counsel simply let these statements pass unchallenged. Counsel and Mr. Pardee both denied the accuracy and veracity of these statements. As a matter of fact, at one point, counsel stated that one of the allegations involving Mr. Pardee allegedly bouncing someone on his crotch was straight-up hearsay. I understand all that, but wasn't there a second amended pre-trial order dated April 3, 2012, and it included the listings of the joint exhibits, including the 2002 pre-sentence investigation report, as Exhibit 13? That's correct, Your Honor. And we don't think that the admission of the PSR was erroneous in toto. There were clearly purposes for which the PSR could have been used properly and parts of the PSR that were not hearsay. And as we discussed in our brief, it would have been inappropriate at that time to seek the complete exclusion of the PSR. It was only the court's use of certain selected parts of hearsay. I was trying to figure out what parts. The judge didn't use it very heavily. I guess we have the video and we have some pictures, but they were otherwise described and addressed by testimony, including testimony of your client. And the question is now we're going to extricate that information simply because it had been included in the PSR, but it was also referred to regularly by others, wasn't it? Well, a couple of things, Your Honor. Mr. Pardee only referred to it because the government questioned him about it. And in fact, in discussing it, he denied, especially in regards to the- He opens himself to the cross-example. Wherever the government gets the information, if they say, did you view a particular picture or did you take this video? He now has to answer that. That doesn't have anything to do with the admission of the PSR. No, correct. But Mr. Pardee's answers to that form of impeachment evidence, once he denies it, you can't bring in hearsay simply by asking a question about it. In other words, the government certainly could question Mr. Pardee about it, but that doesn't allow the court then to use that on the basis of that questioning as substantive evidence. Why not? He says it's not impeachment. The government asked, did you take this video at the picnic? And that's substantive testimony. He says yes, and he tries to explain it away. He says, oh, I was just taking the picnic, and it's there. This is not hearsay. Well, Your Honor, there's no evidence at all in the record other than the description in the PSR about the content of that video. The government counsel never saw the video. The doctors never saw the video. Mr. Pardee hadn't seen the video in 15 years, and certainly, most importantly, the court had never seen the video. No one knows what was on that video except as it was described in the PSR. And, Your Honor, I would say I would disagree with your description that the court did not rely on it very heavily. I think all parties viewed the videos especially, but also the description of the picture seized in 2002, as central to the case. The government spent eight pages talking, questioning Mr. Pardee about it. Well, since we're on plain error review, though, is there anything about those pictures or that video as described in the PSR that was then shown to be inaccurate by Mr. Pardee? It seems to me that the main argument that he was making was not contesting the accuracy of those. And if we're on plain error review, doesn't that create a problem for you? Your Honor, it would create a problem if he had endorsed or accepted the characterization in the PSR, but I don't think that that's a fair reading of the record, especially in regards to the company picnic videos. The PSR makes it sound as if these were totally inappropriate, creepy, sort of voyeuristic videos, in the way they described them by him shooting pictures down children's shirts and inappropriately focusing on body parts and so on and so forth. Mr. Pardee flatly denied that he did any of that. He said the video was completely innocent. That's fine. He can certainly do that. But the question we have to decide is whether or not there was any error in admitting the 2002 report. Isn't it correct that Mr. Pardee's expert used that report in formulating his opinion? As did the government experts. Given the fact Mr. Pardee didn't object to it being admitted, if it's error, are you familiar with the invited error doctrine? Yes, Your Honor, and I would say this was not invited error in this case, because the use of the video by the experts is a well-recognized, appropriate use for an expert in order to formulate his testimony. What is inappropriate is to then sort of bootstrap the expert's use in order to formulate his expert opinion to then import otherwise inadmissible evidence for use as substantive evidence that the court can rely on independently to make its findings. Certainly there would be no problem for the court to say, based on everything these experts have considered, including the PSR, which is hearsay, I credit his testimony because I think he gave a good account of what actually is happening. What the court can't do is bootstrap off of that and import otherwise inadmissible hearsay in order to make its factual finding, which is exactly what the court did here. Now, it may sound like a fine line, but it's a very important line, because otherwise, if we were to hold otherwise, it would sanction the wholesale importation of a hearsay evidence into these cases, and it would, frankly, gut the defendant's ability to confront and cross-examine witnesses against them, because the government or any party, in fact, would be able to insulate a party from cross-examination simply by filtering it through an expert report. And that's simply not what the law is. I don't quite follow the analysis of the hearsay business, because the PSR – let's just take one item. The PSR refers to a video or to a picture. Right. Now, the question then is, is the existence of that document hearsay, and the answer is, well, maybe it is. But then everybody testifies, well, there were such documents, and I did take such documents, and we have lost all the problem with the hearsay, because now we know the video exists. He took the video, and the video wasn't allegedly doctored. What he does is explain the video that he was taking at a picnic, and it just happens to be that was her position, shooting down the front of her dress and this type of thing. But he denies the intent, but he doesn't deny the substance. As a matter of fact, he confirms it. That is not even hearsay, and it's not impeachment, because nobody's questioning there's a lie. He's just confirming the evidence that is real evidence. Well, I think there's an important distinction between confirming the existence of the video, which I think is undisputed. No one disputes that a video existed and a video was seized. What is very much in dispute, and which is, I would submit, clearly hearsay, is the content of that video, because the only— He testified to the content. He did not testify to the content, except to deny the description as contained in the PSR. But this case wasn't about the video. I mean, the court was talking about the expertnesses, about this man's cocaine and alcohol dependencies, and the fact that, in part because of those, he engaged in grooming behavior. He identified dysfunctional families, families with minor children, and then groomed those children, and the court was concerned. I mean, this was the essence of the court's concern, not about him doing the video, but that he had this pattern of going after dysfunctional families. He admitted himself at the hearing that he was still sexually attracted to young children, and that he masturbated because of that. So the court was much more concerned about this totally dysfunctional individual, not the fact he was just maybe shooting a video. I mean, this is a life pattern of drug use and grooming behavior. Well, Your Honor, though, I would submit that the court was very much concerned with the video for the very reasons that you just pointed out, and this is why. As you correctly point out, the essence of this case boils down to the volitional prong of 4248, whether or not he would refrain from engaging in sexual dangerous activity if he were to be released. The essence of Mr. Pardee's defense was, look, I have not had a hands-on offense in 20 years, including five years in the community. And the reason why I've had this contact-free period is because I successfully engaged in sex offender treatment while I was in prison in Washington in 1995 to 1997. Well, isn't that the issue then? The issue is not the status back when the pre-sentence report was formed. That's not in dispute. He was addressed by the system in that portion of his life. But the question now is going forward based on conditions. And all that did is it gave a baseline. But the real opinion in this case is the forecast, isn't it? Well, exactly correct, Your Honor. And this is why the video is of paramount importance, because the government attacked Mr. Pardee's defense that he had the reason for his contact-free period was because of the sex offender treatment program. And the court adopted the government's argument because the video showed that that was not true. If you believe the descriptions contained in the PSR of the videos, Your Honor, they describe the very type of grooming, voyeuristic, inappropriate contact with children that Mr. Pardee was asserting he no longer engaged in. And it was only because the court was explicit. She said, and I must talk about the videos, and I must note that they took place after the sex offender treatment program, and I must say that this shows to me that Mr. Pardee is continuing to engage in inappropriate and risky behavior. It went straight to the heart of Mr. Pardee's defense, which was that, look, I may have had this problem once. I don't have it now. I won't have trouble when I'm out. Yeah, but that doesn't relate at all to that issue there. I once had the problem. That's what the court's recognizing, that problem, and that is of judicial record. What is being determined here is conduct that goes forward and decides whether there's a risk in society. Right, so imagine if the PSR had discussed the videos but simply said, Mr. Pardee, during his course of employment with Huntwood Industries, also took videos of the company picnics, and they were completely innocent. They looked like any other video that any other normal person might have taken. There seemed to be nothing untoward about them. That would be, that would. The PSR was part of a sentence that was actually entered, and we can't go behind, and it's the beginning point for the sex offense. In other words, we're not talking about retrying that case, whether that occurred or whether the video's accurate. He was convicted. But the videos had nothing to do with his conviction. He was convicted of possessing photographs. Fair enough, but whatever is in the video, whatever's in the PSR, related to something that happened, what, 13 years ago, whatever. Exactly right. Yeah, and the court is just starting there because he's a sex offender in the nature of his offense. The real problem is what Judge questioned you about, relating to where's he going now, with his addiction, his drinking, drugs, his desires, his lack of empathy. Right, and Your Honor, I think that's why this evidence is important because this was, in fact, a very close case. The experts were split as to whether Mr. Pardee met the criteria for commitment. But the court didn't see it as a close case in terms of the experts. The court did say, didn't she not, that she found far more credence. Wasn't that her term? She did. She did. And she also was worried about his failure to complete the Butner program. She was worried about His participation was minimal, that he had dropped out after six months, and that that gave her continuing concern about his ability to refrain from this. She was worried about several things, but she also recognized that there was other evidence on the other side, including the fact that he had successfully completed sex offender treatment in the past, that he had this period That was 20 years earlier. Right, but that he had also had periods in the community with no contact, that he had volunteered for treatment, which is a good sign. And so this wasn't a slam dunk case. And all I can say, Your Honors, is I think at the time, at the hearing, the parties viewed the significance of the videos very differently in the arena than perhaps this court is looking at it now. It was a subject of much questioning, much debate, much consideration. Every party mentioned it in their opening, in their questioning, in their closing, in the court's order committing Mr. Pardee. The very first thing she discussed were the nature of the pictures, and later on, the existence of the videos, and the significance of the videos, as to Mr. Pardee's defense, which was, look, I now know enough that I'm not going to engage in this grooming, voyeuristic type of behavior, and based primarily, and I would say significantly, on the description, the hearsay, unconfirmed description of these videos in the PSR, which we have no idea are accurate or not because no one in this court and no one at the hearing had ever seen them. But by accepting them as true, she says, that really pokes a hole, that really blows a hole in your claim that you have changed, and that is significant to my ultimate determination to commit you. And I think that evidence should not have been considered for its truth. Mr. Pardee has a right, as this court has recognized in Baker, to confront and cross-examine the witnesses against him. This was not only unconfronted testimony, it was testimony that we don't even know who made these descriptions. Was it the probation officer who wrote the report? Was it some police officer? What sort of bias might they have been operating under? You know, it's one thing to look at this video if you'd known it had been made by a known sex offender versus it had been made by Great Aunt Sally. You might view these things through a very different prism. So there was fertile ground for cross-examination, fertile ground for confrontation, and absent the ability for anyone in the court to actually see the videos, to simply rely on this sort of uncorroborated, hearsay, unconfronted description and then later use it to commit Mr. Pardee,  as this court has recognized in Baker. So I'd reserve the rest of my time, Your Honors. Thank you. Mr. James. Good morning, Your Honors. My name is Michael James, and I represent the United States in this matter. Your Honor, let me first begin by referencing some comments made by appellate's counsel. First, Judge Niemeyer, you are correct in regards to the description of the video. Mr. Pardee did not dispute that. He stated, I believe, in the joint appendix beginning at around 130 to 133, that references the talk about the actual description of the video. He doesn't deny that the descriptions contained in the PSR are correct. He was saying, I was downloading it, but I wasn't really looking at it. He doesn't deny the accuracy of the description in the videos. With regard to the videos of the office picnics from 1999 to 2001, I believe, he doesn't deny that that's what the description in the PSR is correct as to what is shown. He is saying, though, that's not his intent. I'm not focusing on the girl's chest. I'm focusing that the kids are picking up things from the straw, and that's where the focus is. But he doesn't deny the actual accuracy of it. Now, our first point, however, because this is on a plain error standard of review, as you mentioned, Judge Keenan, he has waived that. He has waived that because in the amended Petrol Order, as mentioned by you, Judge Hamilton, he did not object. Mr. Pardee had three competent attorneys working with him in this case, and there was no objection from any of the three. Didn't his attorneys use the PSR in their direct examination and the cross-examination? That's correct, Your Honor. In fact, one of his counsels during the examination, I believe it's Joint Appendix 157 to 158, was in an attempt to rehabilitate him, was stating, well, you were just downloading, I'm paraphrasing now, of course, Your Honor, you were just downloading these things, but you were really interested in the painful aspects of the depictions in the videos, and he said that's correct. He was not turned on by that. And I believe, likewise, in reference to the office picnic videos, he was saying that was not his intent, getting back to what Judge Niemeyer stated during questioning. So he, in fact, does not dispute the accuracy of this, of the videos. Our position is that there is no error here. He cannot meet the plain error standard in Alano. There is absolutely no error because, one, he waived any error. If there was error, which we don't concede, it would have been waived because. . . I just have difficulty figuring out why a pre-sentence report leading to his conviction. He was charged with possession of pornography, child pornography, and a pre-sentence report that explains the underlying facts that formed the basis for the sentence in that case. While that is an official record at least to explain that charge, which is not on appeal, the question is that's a starting point, and that's not hearsay any more than bringing in the judicial record or testimony to explain that case. And that's 2002 or 2001, whenever that occurred. And it seems to me that you have to start with a sex offense on this whole thing. That's correct, Judge. And the judge is now evaluating whether now has he been cured of the problems. Has he gone through programs? Is he going to likely offend? Is he going to be dangerous? That's the main issue. And the court explained why. Nobody disputes those facts underlying that original offense. They dispute the significance of them. He's trying to downplay them, of course, but that doesn't mean that evidence isn't real evidence and not hearsay. It's of that conviction. That's correct, Your Honor. And as the court pointed out during questioning, he, in fact, confirmed it. He confirmed he doesn't dispute the descriptions on the videos. He says, well, I wasn't really, I'm not into the painful aspects on the videos that were depicted involving the girls, Helena and Natalie, and with little. He sorted them out. He didn't want the painful ones. That's correct. And that was never an issue. He didn't challenge it at sentencing either in his criminal case. And so that really was not an issue. With regard to what the court's focus was, appellant's counsel makes it out as if this was the end-all, be-all, that if the descriptions were not there, then there is absolutely no evidence, basically, in which you could really find that he didn't meet the third prong, which is the only prong that's in dispute before this court, because he conceded prongs one and two. As Judge Keenan mentioned during questioning, the court made a credibility assessment that the respondent's expert witness was far less credible than the expert witnesses that the government put on. In particular, as you recall, Mr. Pardee, his supervision was revoked because he was using drugs. And part of his unlying offense has always been drugs and alcohol. His expert witness downplayed that connection between the drugs and alcohol, and I believe Judge Flanagan mentioned that in her order at about 388 and 392 of the joint appendix. And what the judge also found of particular interest to the court and worrisome was Pardee's thinking errors, and that's at joint appendix 387. And so the court was concerned about far more than just the description videotaped, which Mr. Pardee did not contest what was actually described. Now, because this is on plain error standard, we believe he has waived his right. He did object to the PSR. As mentioned by Judge Hamilton, the amended PSR, he didn't object. The PSR, the pretrial, excuse me, he did object to the pretrial order, excuse me. The pretrial order at joint appendix 75 and 76, in that he stipulated the authenticity and the admissibility of the documents. He agreed to the admissibility of the joint trial notebook in which this was exhibit number 13. And so he has waived, he can't meet the first prong of Alano. And with that, Your Honor, are there any other questions? All right, thank you very much. Thank you. Mr. Block. Thank you, Your Honors. Real quick, you know, I understand your point about, in regards to the pictures that form the basis for Mr. Pardee's conviction in 2002, and perhaps you're concerned why those may not, in fact, be hearsay. I don't think, though, that that analysis applies in any way to the descriptions of the picnic videos, which form no part of the conviction and were completely inessential to that conviction. I think those are classic hearsay statements, out-of-court statements offered for their truth. And to the extent that they were important, I just want to quote, you know, the district judge on Appendix 391. Certainly there was other things that played into her opinion, but this was something that was of significance. She talks about the nature of the videos and focusing on prepubescent females and camera pointing down the front of the shirt. And then she goes on to say, and this is after the respondent completed that therapy in Washington, and goes on to say, and this is exactly the age and type of child that he admitted a particular attraction to, blonde, young females, okay? So this goes to the heart of Mr. Party's defense, but it is based on allegations that no one can say... He confirmed them. He was questioned about, okay, here's the picture of the girl in the haystack. Yeah, I took that, but that was not intentional. Here's a picture of this person. Well, that was accidental. It wasn't on purpose, and I was photographing all the activities, that type of thing. So he didn't deny any single shot he took. What he says is that they were innocent, and he's the only person who can testify to the purpose of the video. I don't think that that's a fair characterization of Mr. Party's testimony. He was questioned about it, and he's testified this was a video he took 15 years ago and that he had never looked at since. But what he did say was, you know, I was videotaping everybody at this picnic. That's very different than the description of the PSR, which made it sound as if he was focusing in an inappropriate voyeuristic manner. He never denied any of those pictures. He basically said, that's what I took, but that was not the purpose. Your Honor, I... I just seem to remember the haystack thing. He says, he says, your video is focused on a prepubescent female as she was looking for a prize in a stack of hay, and the camera pointed down, and he says, it might have been, it wasn't purposefully, they were on the ground searching through hay and stuff, and then... So he's confirming everything there that he took. That's the substance of the picture. Your Honor, it's very different if I'm taking a picture of this company picnic, whether or not I might have happened to catch a glimpse of this girl versus the characterization in the PSR. I understand, but that's for the court to assess the fact he got to fully explain it. It's not hearsay, and the pre-sentence report is just describing accurately what he confirms he took. It's not as if the video was being launched onto him and it was actually taken by somebody else. He says, that's my video, I took it, I didn't have any purpose of going after young girls, it was just part of the activity. And, Your Honor, I think, short of anyone seeing that picture and having a chance to cross-examine the person who made that description, we cannot... You don't need to cross-examine him, you look at the picture. But no one did look at the picture. He confirms it. Your Honor, I think... He can also confirm the one shooting down the front, as I recall. I think what he did is he just said, I don't know, it may have been there, I was taking pictures of everyone. And that's very different than the description of the PSR,  that no one has ever had the chance to confront. Except that was part of his conviction for child pornography. That was not part of his conviction, Your Honor. That was part of the pre-sentence report. It was part of the pre-sentence report, but... And that's in the pre-sentence report, and he had a chance to object, he didn't object. I just don't understand what the issue is about that. This is not a classic hearsay question. This is a question, he's been convicted of child pornography, and the question now, after 12 years since then, is he dangerous to society now? Back then, that has been taken care of. We're not re-litigating that. The question is, is an assessment now. And what he photographed then isn't what he's doing now. His argument is that, not that was inaccurate, his argument is, I'm reformed. And I've changed. And so now the court had to assess that. Correct, Your Honor. And I see my time is up. I would just leave on this note that... No, go ahead and make your point. My point is this, is that, just in general, information in PSRs is recognizing case after case as containing hearsay information. That is not a controversial statement. Now, it's admissible at sentencing, because hearsay is admissible at sentencing. But the issue is not that the allegations are not hearsay, it's that they're otherwise admissible in that particular type of proceeding. In this case, I don't think, I would disagree with Your Honor, that the descriptions of the PSR made by some unknown proponent about the content of the video is not hearsay. Why does it contribute? He was a child's pornography, he was a sex offender. And that occurred back then. That's correct. That is irrelevant to his dangerousness now. And Your Honor, I guess my only response would be that the district court felt that the content of the video was significant and relevant because she did make it part of her decision, and because we think that she shouldn't have relied on that, that's our argument for why the case should need to go back. Thank you. And so you think that she found him dangerous to society today because of the conduct in 2002 or 2001? I think that definitely played into her decision. I think a fair reading of her order would suggest that, yes, sir. Okay. Thank you, Your Honor. Thank you. We'll come down and greet counsel, and then proceed on to the next question.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Clyde H. Hamilton